# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CRITTER CONTROL, INC.<br>   a Michigan corporation<br>      Plaintiff,<br><br>v.<br><br>CRITTER CONTROL OF THE<br>   GULF COAST, LLC<br>   an Alabama limited liability company, and<br><br>and<br><br>VAN NORMAND, an individual<br><br>      Defendants. | No. _____<br><br><br>Hon. |

**Attorneys for Plaintiff**
Paul R. Fransway (P37900)
Bernard J. Fuhs (P69621)
Jennifer A. Dukarski (P74257)
***BUTZEL LONG, a professional corporation***
301 E. Liberty
Suite 500
Ann Arbor, Michigan 48104
(734) 213-3269
Fransway@butzel.com
Fuhs@butzel.com
Dukarski@butzel.com
_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Critter Control, Inc., ("Plaintiff" or "Critter Control") by its attorneys, Butzel Long, a professional corporation, for its Verified Complaint for Injunctive Relief against Defendants Critter Control of the Gulf Coast LLC and Van Normand ("Defendants") states as follows:

## Nature of the Action

1. While the parties are obligated to arbitrate disputes pursuant to the Franchise Agreements (discussed *infra*), Critter Control has the discretion to seek injunctive relief from this Court related to the enforcement of, among other things, covenants not to compete and unauthorized use of trademarks, trade secrets or confidential information.

2. Critter Control seeks, among other things: (i) a preliminary and permanent injunction enjoining Defendants' wrongful and unlawful use of Critter Control federally registered trademarks; (ii) a preliminary and permanent injunction enjoining Defendants from wrongfully and unlawfully competing with Critter Control; (iii) an order that Defendants be required to submit all their claims to arbitration; and (iv) such other and further relief as the Court deems appropriate.

## Parties

3. Critter Control is a Michigan corporation located in Traverse City, Michigan. Critter Control grants franchises to qualified persons to operate Critter Control franchised businesses using Critter Control's unique operating systems and proprietary names and marks, including its "Critter Control" names and marks.

4. Defendant Critter Control of the Gulf Coast LLC is a former franchisee of Critter Control who operated a franchised business within certain territories in Alabama, Louisiana and Mississippi ("Franchised Businesses").

5. Defendant Van Normand is an individual residing in Alabama and a former franchisee of Critter Control who personally guaranteed all performance obligations of Defendant Critter Control of the Gulf Coast LLC.

6. Defendants have consented to the jurisdiction of this Court under the Franchise Agreements (discussed *infra*). Further, Defendants traveled to Michigan as franchisees, regularly communicated with Critter Control personnel located in Michigan, made regular royalty payments to Critter Control's bank account located in Michigan, and regularly accessed and utilized Critter Control's confidential and trade secret information and databases, much of which is housed on Critter Control's computer servers located in Michigan.

### Jurisdiction and Venue

7. This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

8. Jurisdiction is also proper under 28 U.S.C. §§ 1332 and 1367 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. §1332(1).

9. Venue is proper in this Court because certain events giving rise to Critter Control's claim occurred in this district and Defendants are subject to personal jurisdiction in this district for the purposes of 28 U.S.C. § 1391.

### Critter Control Registered Trade and Service Marks

10. Critter Control has developed, and is the sole and exclusive owner of, unique and uniform systems relating to the establishment and operation of Critter Control franchised businesses.

3

Case 1:13-cv-00401-RJJ Doc #1 Filed 04/12/13 Page 4 of 19 Page ID#4

11. To identify the source, origin and sponsorship of its Critter Control franchised businesses and the products and services they offer, and to distinguish those franchised businesses, products and services from those established, made, offered and sold by others, Critter Control has extensively used certain trademarks, service marks, trade names, logos, emblems and indicia of origin (the "Critter Control Marks").

12. The Critter Control Marks are registered on the Principal Register of the United States Trademark and Patent Office. The registrations include Reg. Nos. 1,503,278 and the other registrations detailed on Exhibit A. The registrations of the Critter Control Marks continue in full force and effect, and the primary Mark (Reg. No. 1,503,278) is incontestable under § 15 of the Lanham Act, 15 U.S.C. § 1065. (See Exhibit A).

13. Critter Control has given notice to the public of the registration of the Critter Control Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure Critter Control remains the exclusive user of the Critter Control Marks.

14. Critter Control has continuously used the Critter Control Marks in interstate commerce in connection with the promotion, sale and franchising of Critter Control franchised businesses and services and the promotion and sale of the products and services they offer throughout the United States, including Alabama and Michigan, since the date of their registration.

15. Critter Control has the exclusive right to use and license the Critter Control Marks and derivations thereof, as well as the unique and uniform system with which franchisee offer Critter Control products and services to the public under the Critter Control Marks. Pursuant to Franchise Agreements entered into by and between Critter Control and its authorized and approved franchisees, Critter Control grants franchises to qualified persons to operate Critter

4

Control franchised businesses using the Critter Control Marks and Critter Control uniform system, but only in such manner and at such locations as are expressly authorized by Critter Control.

16. Critter Control and its authorized franchisees use the Critter Control Marks as the marks and trade identity by which the products and services offered by Critter Control and its Critter Control franchisees are distinguished from animal control service providers and the products and services offered by them.

17. Critter Control and its authorized Critter Control franchisees have extensively advertised and promoted Critter Control franchised businesses and the products and services they offer under the Critter Control Marks throughout various states in the United States, including both Michigan and Alabama, through various media. As a result of such efforts and the considerable money spent in connection therewith, as well as the high product quality and long use and reputation of Critter Control and its authorized franchisees, the products and services offered by Critter Control and its Critter Control franchisees under the Critter Control Marks have been met with widespread public approval and have established demand and goodwill among consumers throughout the United States, including Alabama and Michigan.

### The Parties' Franchise Agreements

18. Critter Control, as franchisor, and Defendant Critter Control of the Gulf Coast LLC, as franchisee, entered into a written Critter Control Franchise Agreement dated October 16, 2006 pursuant to which Critter Control granted Defendants a franchise to operate a Critter Control Franchised Business to be located in Baldwin, Escambia and Mobile counties in Alabama; Hancock, Harrison and Jackson Counties in Mississippi; and Escambia, Okaloosa and

Santa Rosa counties in Florida, together with a limited license to use Critter Control names and marks in connection therewith. (See Exhibit B).

19. Critter Control, as franchisor, and Defendant Van Normand as franchisee, also entered into a written Critter Control Franchise Agreement dated March 31, 2008 pursuant to which Critter Control granted Defendant Van Normand a franchise to operate a Critter Control Franchised Business to be located in Ascension, East Baton Rouge, Jefferson, Livingston, Orleans, Pointe Coupee, St. Charles, St. Helena, St. Tammany, Tangipahoa, Washington, West Baton Rouge, counties in Louisiana, together with a limited license to use Critter Control names and marks in connection therewith. (See Exhibit C).

20. Critter Control, as franchisor, and Defendant Critter Control of the Gulf Coast LLC as franchisee, also entered into a written Critter Control Franchise Agreement dated January 1, 2010 pursuant to which Critter Control granted Defendant Critter Control of the Gulf Coast LLC a franchise to operate a Critter Control Franchised Business to be located in Jackson, Mississippi in Forest, Hinds, Madison and Rankin counties in Mississippi, together with a limited license to use Critter Control names and marks in connection therewith. (See Exhibit D).

21. Defendant Van Normand personally guaranteed all of the obligations of the Defendant Critter Control of the Gulf Coast LLC under the Franchise Agreements, jointly and severally, and agreed to be personally bound by, and personally liable for the breach of, each and every provision in the Franchise Agreements.

22. Pursuant to the Franchise Agreements, Defendants were required, among other things, to:

    a) promptly pay royalty fees to Critter Control;

    b) pay late fees if royalties were not paid to Critter Control on a timely basis;

6

 c) promptly pay advertising fees;

 d) timely file accurate and complete financial reports fully and completely reporting all gross revenues of the Franchised Businesses, as required by the Franchise Agreements and Critter Control standards;

 e) maintain solvency in order to continue operation of the Franchised Businesses, including full and timely payment of taxes;

 f) comply with applicable local, state and federal regulations relating to the Franchised Businesses, including the timely reporting and payment of taxes; and

 g) comply with Critter Control system standards, including those relating to employees, promotion of services and the types of services offered.

23. Defendants further agreed that if Defendants failed to perform any obligations under the Franchise Agreement, Critter Control would be entitled to terminate the Franchise Agreements (*See* Ex.'s B, C and D, Sections 14 and 15).

24. Upon termination of the Franchise Agreements, Defendants agreed, *inter alia*, to: (i) promptly pay any sums owed by the Franchised Business to Critter Control, including royalty and advertising fees, amounts owed for the purchases from Critter Control and other charges or debts owed to Critter Control (Section 16.A.); (ii) cease using the Critter Control names or trademark or use any of such trademarks or intellectual property or do anything to advise anyone that they were previously associated with the Critter Control system or were a Critter Control franchisee, including any use of telephone numbers that use these trademark (Section 16.B); (iii) promptly deliver to Critter Control any materials that use the Critter Control trademarks (Section 16.C.); (iv) promptly return to Critter Control all Operations Manual(s), proprietary software and other confidential information received or purchased from Critter Control or its suppliers in

7

connection with the operation of the Franchised Businesses as well as customer lists, files and records developed by either Critter Control or the Defendants (Section 16.E.); and (v) comply with the non-competition covenant under Section 17 of the Franchise Agreements.

### Defendants' Access to Critter Control's Confidential and Proprietary Information and Trade Secrets

25. During the course of Defendants' relationship with Critter Control, Defendants had access to and utilized on a regular basis Critter Control's confidential and proprietary information and trade secrets, including, but not limited to, the Critter Control Operation Manuals, specialized training, business affairs, customer lists and information, marketing and sales strategies, methods and techniques, and pricing and cost information.

26. The information to which Defendants were exposed is of great value not only to Critter Control, but also to its competitors who do not possess or have access to this information. The information derives independent economic value and is not generally known to or readily ascertainable by proper means by other persons or companies.

27. For this reason, Critter Control takes reasonable steps to ensure that its information stays confidential. Such measures include the use of non-compete and confidentiality provisions within its Franchise Agreements, requiring franchisees to obtain non-compete and confidentiality agreements with its employees, password protection on all computer systems, party reservation systems and website changes, restricted building and facility access, and access to information on a need-to-know basis.

### Defendants' Breaches of the Franchise Agreements

28. Defendants have failed to comply with their obligations under the Franchise Agreements. Among other things, Defendants failed to: (i) pay sums due to Critter Control for


Case 1:13-cv-00401-RJJ Doc #1 Filed 04/12/13 Page 9 of 19 Page ID#9

royalties and for advertising fees; (ii) submit reports accurately and completely reporting gross revenues; (iii) pay the sums due to their creditors, including state agencies; (iv) observe local, state and federal regulations relating to the Franchised Businesses of the Defendants; and (v) comply with the post termination non-competition covenants of the Franchise Agreements.

29. In addition, Defendants' failure to properly and timely pay various taxes due to the State of Mississippi, which resulted in significant deficiencies for the Franchised Business the seizure of all financial accounts and liquid assets and other assets of the Franchised Businesses, effectively putting such businesses out of business and forcing their closure.

30. On March 8, 2013, Critter Control sent Defendants a notice of termination under the Franchise Agreements noting that Defendants had failed to report and pay sums due relating to the Franchised Businesses and ceased operation. (See Exhibit E).

31. Pursuant to the Notices of Termination, Defendants had thirty (30) days in which to cure the breaches; however, Defendants failed to cure their breaches within that time period. Accordingly, as provided by the Notices of Termination, the Franchise Agreements were terminated without further action by the Critter Control, effective on April 10, 2013. Critter Control has sent confirming notices to Defendants noting that the Franchise Agreements were terminated as a result of the failure of the Defendants to cure.

### **Defendants' Breaches of Their Post-Termination Obligations**

32. Since termination of the Franchise Agreements, Defendants have failed to comply with the post-termination obligations of the Franchise Agreements, and they continue to operate using the Critter Control trademarks in their competing business operation and using the Critter Control's confidential information.


33. Specifically, Defendants have failed and refused to: (i) destroy and discontinue use of any materials or designations indicating or intending to indicate that Defendants were a Critter Control franchisee; (ii) permanently discontinue using the Critter Control system and any confidential information that Defendants received; (iii) deliver the Confidential Manuals and all other manuals or materials received by Defendants under the Franchise Agreements; (iv) discontinue any advertising that identifies Defendants with Critter Control or its system; and (v) comply with the non-competition covenant under Section 17 of the Franchise Agreements.

34. Relative to the non-competition covenant, Defendants are violating the two (2) year post-termination covenant not to compete by operating a business which offers the same or similar products or services as those offered by the Critter Control, and which is located: (i) in the Territory granted by Critter Control to Defendants; or (ii) within a thirty (30) mile radius of the Territory's boundaries or that of any franchisee or affiliate of Franchisor and by diverting business from the Franchised Businesses previously operated by Defendants to Defendant's current business which is in competition with Critter Control and its authorized franchisees. Defendants are continuing to own, operate, engage in and perform services that offer products and services that were offered by the Franchised Businesses during the continuation of the Franchise Agreements within their own Territory. Indeed, Defendants are refusing to transfer telephone numbers associated with Critter Control trademarks and are in the process of having customer calls diverted to other non-Critter Control phone numbers and setting up and/or using other corporate entities to compete with Critter Control – all in violation of their post-termination obligations.

35. Despite Critter Control's demand that Defendants comply with their post-termination obligations under the Franchise Agreements, Defendants have failed and refused to do so.

36. Critter Control has at all times fully performed all of their obligations under the Franchise Agreements.

### Defendants' Infringement of the Critter Control Marks

37. Notwithstanding the termination of the Franchise Agreements, Defendants continue to use the Critter Control Marks in connection with the operation of their businesses through the use of the Critter Control Marks, to use the phone numbers that are listed under Critter Control's trademarks when this is the means that Critter Control's customers primarily use to purchase services and products and to continue to hold their businesses as associated with Critter Control even though they no longer have a license to use the Critter Control's trademarks.

38. Defendants' use of the Critter Control Marks is without the license or consent of Critter Control, has caused or is likely to cause mistake, confusion or deception in the minds of the public as to source, affiliation and sponsorship of Defendants' activities and constitutes infringement of Plaintiff's trademarks.

39. In addition to the fact that both Critter Control and Defendants' no-longer-franchised business offer identical products and services, the products and services provided by Defendants using the Critter Control Marks are offered to the same class of consumers as those who patronize authorized Critter Control franchised businesses. Upon seeing the familiar Critter Control Marks, through Defendants' unauthorized use, consumers will be deceived into concluding that Defendants' no-longer-authorized businesses, and the products and services they

offer and sell, are subject to Critter Control supervision, are sponsored or endorsed by Critter Control and bear the Critter Control Marks pursuant to Critter Control authority and permission.

40. So long as Defendants continue to use the Critter Control Marks in connection with the operation of their no longer authorized businesses, consumers have no practical way of knowing that Defendants' former Critter Control Franchised Businesses are no longer affiliated with, sponsored, authorized or endorsed by Critter Control. As a result, any consumer dissatisfaction with Defendants' no longer authorized business, or with the products and services offered in connection therewith, will be attributed to Critter Control and the entire Critter Control franchise system.

41. Defendants have received actual notice of their violation and infringement of the Critter Control Marks and have constructive notice of Critter Control rights in the Critter Control Marks and the registrations thereof under 15 U.S.C. § 1072. Defendants' continued infringement is willful, malicious, fraudulent and deliberate.

## COUNT I
## BREACH OF CONTRACT- POST TERMINATION OBLIGATIONS

42. Critter Control repeats and realleges ¶¶ 1 through 41 of its Verified Complaint for Injunctive Relief, as if fully set forth herein.

43. Under the Franchise Agreements, the parties are obligated to arbitrate disputes arising from the Franchise Agreements, subject to limited exceptions as follows:

> "Notwithstanding the foregoing, Franchise Owner acknowledges that Franchisor may elect in its discretion to either arbitrate or initiate legal proceedings in an appropriate court of law from claims involving injunctive relief relating to the enforcement of, among other things, covenants not to compete and unauthorized use of trademarks, trade secrets or confidential information." (Section 18; second paragraph).

44. Critter Control intends to observe the arbitration provisions of the Franchise Agreements as to any non-injunctive relief. Critter Control has, or will shortly, commence arbitration proceedings against Defendants to bring its various breach of contract claims for legal relief, but Defendants' failure to comply with their post-termination obligations relating to Defendants' unauthorized use of trademarks, trade secrets and confidential information are also breaches of contract that the parties have agreed shall be subject to Critter Control's ability to seek injunctive relief from this Court.

45. Defendants' have failed and refused to perform their post-termination obligations under the Agreement, by:

(i) failing to discontinue use of any materials or designations indicating or intending to indicate that Defendants were a Critter Control franchisee;

(ii) failing to permanently discontinue using the Critter Control system and any confidential information that Defendants received;

(iii) failing to deliver the Confidential Manuals and all other manuals or materials received by Defendants under the Franchise Agreement;

(iv) failing to discontinue any advertising that identifies Defendants with Plaintiff or its system including the phone numbers; and

(v) failing to comply with the noncompetition covenant under Section 17 and the other restrictive covenants of the Franchise Agreement.

46. Unless ordered by the Court to comply with their post-termination obligations under the Agreement, Defendants will continue to breach their post-termination obligations.

47. As a direct and proximate result of Defendants' material breaches of the post-termination obligations of the Franchise Agreements, Critter Control has suffered irreparable

injury, and there is immediate and imminent danger that Critter Control will continue to suffer irreparable injury.

48. Critter Control is entitled to preliminary and permanent injunctive relief against further breaches of the Franchise Agreement.

49. As a direct and proximate result of Defendants' breaches of their post-termination obligations, including their trademark infringement and breach of the non-competition covenant, Critter Control has been damaged in an amount that is difficult to calculate with certainty. Critter Control has brought this action to obtain extraordinary relief for which Critter Control has no adequate remedy at law.

## COUNT II
## LANHAM ACT - TRADEMARK INFRINGEMENT

50. Critter Control repeats and realleges ¶¶ 1 through 49 of its Verified Complaint for Injunctive Relief, as if fully set forth herein.

51. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Critter Control Marks, and Defendants' sale, offering for sale, distribution or advertising of goods and services under the Critter Control Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(l).

52. As a direct and proximate result of Defendants' infringement, Critter Control has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

53. Critter Control has no adequate remedy at law because the Critter Control Marks are unique and represent to the public Critter Control identity, reputation, and goodwill, such that damages alone cannot fully compensate Critter Control for Defendants' misconduct.

54. Unless enjoined by the Court, Defendants will continue to use and infringe the Critter Control Marks, to Critter Control's irreparable injury. This threat of future injury to Critter Control business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the Critter Control Marks, and to ameliorate and mitigate Critter Control injuries.

## COUNT III
## LANHAM ACT - UNFAIR COMPETITION

55. Critter Control repeats and realleges ¶¶ 1 through 54 of its Verified Complaint for Injunctive Relief, as if fully set forth herein.

56. Defendants' acts, practices, and conduct constitute unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. § 1125(a).

57. As a direct and proximate result of Defendants' unfair competition, Critter Control has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

58. Critter Control has no adequate remedy at law because the Critter Control Marks are unique and represent to the public Critter Control identity, reputation, and goodwill, such that damages alone cannot fully compensate Critter Control for Defendants' misconduct.

59. Unless enjoined by the Court, Defendants will continue to compete unfairly with Critter Control, to Critter Control's irreparable injury. This threat of future injury to Critter Control business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued unfair competition, and to ameliorate and mitigate Critter Control injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Critter Control respectfully requests the following relief:

A. A preliminary and permanent injunction enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with them from:

1. Using the Critter Control Marks or any trademark, service mark, logo or trade name that is confusingly similar to the Critter Control Marks;

2. Otherwise infringing the Critter Control Marks or using any similar designation, alone or in combination with any other components;

3. Passing off any of their products or services as those of Critter Control or Critter Control authorized franchisee;

4. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products or services;

5. Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with Critter Control and its franchisee or any of Critter Control's products or services; and

6. Unfairly competing with Critter Control or its franchisees, in any manner; and

B. An order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, receptacles, logo items, and advertisements in the possession of Defendants, their affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or

participation with them bearing the Critter Control Marks, if any, be delivered to Critter Control at Defendants' cost;

C. That Defendants be required to promptly eliminate their advertising under the Critter Control Marks or any other confusingly similar designations from all media including, but not limited to, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings and mass mailings, all at Defendants' cost;

D. That Defendants be ordered to transfer the telephone numbers and telephone listings associated with phone numbers that use the Critter Control trademarks to Critter Control or its designee;

E. That Defendants be required to file with the Court and to serve upon Critter Control counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

F. An Order directing Defendants immediately to perform the following contractual post-termination obligations under the Agreement:

1. Destroy and discontinue use of any materials or designations indicating or intending to indicate that Defendants were a Critter Control franchisee;

2. Permanently discontinue using the Critter Control system and any confidential information that Defendants received;

3. Deliver the Confidential Manuals and all other manuals or materials received by Defendants under the Franchise Agreement;

4. Discontinue any advertising that identifies Defendants with Plaintiff or its system;

5. Refrain from, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business (including, without limitation, as a lessor of personal or real property) which offers the same or similar products or services as those offered by the Critter Control system, and which is located: (i) in the Territory (as defined by the Franchise Agreements); or (ii) within a thirty (30) mile radius of the Territory's boundaries or that of any franchisee or affiliate of Critter Control.

G. That the Court's order clearly reflect that Critter Control has the continued and preserved right to continue to seek appropriate relief from any arbitrator appointed in a dispute

involving Critter Control and Defendants that has not been addressed by this Court in its injunctive orders, including requiring Defendants account and pay over to Critter Control all gains, profits and advantages derived by them, and any damages incurred by the Plaintiff as a result of their infringement of the Critter Control Marks and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law;

H. An award of the costs and expenses, including reasonable attorneys' fees, incurred by Critter Control in connection with this action as provided for by the Franchise Agreements and the applicable statutes; and

I. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**Butzel Long, a professional corporation**

Dated: April 12, 2013

By:/s/Bernard J. Fuhs
Paul R. Fransway (P37900)
Bernard J. Fuhs (P69621)
Jennifer A. Dukarski (P74257)
301 E. Liberty - Suite 500
Ann Arbor, Michigan 48104
(734) 213-3269
Fransway@butzel.com
Fuhs@butzel.com
Dukarski@butzel.com

1400747.1

## **VERIFICATION**

Kevin Clark, first being duly sworn, deposes and states that he is the CEO of Critter Control, Inc., Plaintiff in the above-entitled action; that he has read the foregoing Verified Complaint and knows its content; and that the statements of fact set forth in the above Verified Complaint are true and correct, except as to matters therein stated to be on information and belief; and as to those matters, he believes the same to be true to the best of his knowledge and belief.

_____
Kevin Clark

Sworn to and subscribed before me
this 11 day of April, 2013.

_____
Notary Public

1400607.1

SHANNON LEE OTT
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF GRAND TRAVERSE
MY COMMISSION EXPIRES 12/31/2018
ACTING IN THE COUNTY OF Grand Traverse